

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAY - 7 2019

CLERK, U.S. DISTRICT COURT
By _____ _____
       Deputy

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE, | § | |
| | § | |
| | § | |
| Plaintiff, | § | C.A. No. 4:19-cv-00344-A |
| | § | Rule 9(h) Admiralty |
| V. | § | |
| | § | |
| PK YACHT OPERATIONS, LLC, | § | |
| | § | |
| Defendant | § | |

## COMPLAINT

Plaintiff, GREAT LAKES INSURANCE SE ("Great Lakes"), hereby sues the Defendant,

PK YACHT OPERATIONS, LLC ("PK Yacht") for declaratory relief and in support thereof states

as follows:

### JURISDICTION AND VENUE

1.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2.     Great Lakes designates this as an admiralty and maritime cause within the meaning

of Fed. R. Civ. P. 9(h). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1333, as

it involves a dispute regarding a maritime contract. Great Lakes invokes the provisions of Rule

9(h), 38(e), and 82 of the Federal Rules of Civil Procedure.

3.     Venue is proper within the United States District Court for the Northern District of

Texas under 28 U.S.C. § 1391(b)(1). PK Yacht resides in Haslet, Texas, which is located within

this district and division thereof, and because the policy of insurance under which this action arises

requires that disputes thereunder must be litigated either: (1) where the insured resides; or (2)

where the insured's agent resides. Because the PK Yacht resides in Tarrant County, PK Yacht has

consented to jurisdiction in this district.

4.      All conditions precedent to the filing of this action have occurred, been waived or otherwise complied with.

5.      Pursuant to the requirements of 28 U.S.C. § 2201 and Article III, Section 2 of the United States Constitution, a case or controversy exists and has existed between the Parties since the beginning of this action, such that an action or declaratory judgment is ripe and appropriate.

## PARTIES

6.      At all times material to this action, Great Lakes is and was a corporation organized and existing under the laws of Germany and is and was a wholly owned subsidiary of Munich Re Group, with an office and principal place of business in Munich, Germany. Plaintiff Great Lakes is and was a citizen of Germany and is registered and authorized to conduct business in London, England.

7.      At all times material to this action, Defendant PK Yacht is and was a limited liability company organized under the laws of the State of Texas.

8.      At all times material to this action, PK Yacht has and had three members, Brent Helling, Robert Tyer, and Steven Helling.

9.      At all times material to this action, Brent Helling is and was an individual domiciled in Texas. Brent Helling is and was a citizen of Texas.

10.     At all times material to this action, Robert Tyer is and was an individual domiciled in Texas. Robert Tyer is and was a citizen of Texas.

11.     At all times material to this action, Steven Helling is and was an individual domiciled in Texas. Steven Helling is and was a citizen of Texas.

12.     Therefore, because each of PK Yacht's members is and was a citizen of Texas, Defendant PK Yacht is and was a citizen of Texas.

2

## FACTUAL ALLEGATIONS

13.     Plaintiff Great Lakes issued a Commercial Yacht Policy to PK Yacht, policy number CSRYP/171797, with effective dates of December 6, 2018 to December 6, 2019 (the "Policy"). A copy of the Policy is attached hereto as **Exhibit "A"** and is fully incorporated herein.

14.     The Policy insures a 2001 89' Arno Leopard M/Y "Endera" (the "Vessel").

15.     The Policy provides a hull limit of $1 million, subject to a $40,000 deductible.

16.     The Policy provides, in relevant part:

**3. Coverage A, Hull, Machinery, Equipment and Dinghy**

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

\*      \*      \*

17.     However, the Policy also provides the following pertinent exclusions:

**Exclusions to Coverage A**

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

e. Manufacturing defects or design defects, including latent defects.

\*      \*      \*

18.     Finally, the Policy provides the following general conditions and warranties:

**9. General Terms and Warranties**

a.  It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

3

       s.   Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

19.    On or about February 17, 2019, Captain Anastassios Spiropoulos loaded approximately 12 guests and 3 crew members about the Vessel in the Miami Beach marina to provide a sailing tour of the Miami area.

20.    Within a few minutes of departing the marina, one of the crew noticed the Vessel taking on water in the engine room.

21.    As the water level increased, the crew member notified Captain Spiropoulos, who called the United States Coast Guard for assistance.

22.    The United States Coast Guard dispatched several pump boats and Miami-Dade County police boats also responded to the scene.

23.    The pump boats evacuated the salt water from the Vessel's engine room.

24.    Fast Response Towing was then called to the scene, which towed the Vessel to Memorial Island to keep her from sinking.

25.    Once the Vessel was stabilized and towing company found a shipyard to assist with rescue operations and the Vessel was towed RMK Merrill Stevens Shipyard in Miami where it was hauled out of the water and placed on blocks.

26.    Upon inspection following the partial sinking, it was determined that the Vessel has a stern-mounted garage door, the lower edge of which is very close to the waterline.

27.    The garage door is not watertight.

28.    As a result, even minimal wave action can be expected to create water entry into the lazarette.

29.     Water entering the lazarette will accumulate in the bilge.

30.     Both the forward and aft engine room bulkheads are fitted with watertight doors and labels calling for those doors to be closed when at sea.

31.     However, both the forward and aft bulkheads are not watertight under the sole, which is also not watertight.

32.     The aft engine room bulkhead is missing large sections of bulkhead such that any water in the bilge of the lazarette can free flow into the engine room.

33.     This condition, which has been present from the time that the aft engine room bulkhead was not connected to the hull shell, is an as-build factory condition.

34.     The combination of the above-features and conditions meant that the Vessel was, since its construction, at a high risk of rapid flooding and was consequentially unseaworthy.

35.     Furthermore, this combination of features constitutes a manufacturing and/or design defect in the Vessel which are specifically excluded under the terms and conditions of the Policy.

## COUNT I – BREACH OF ABSOLUTE IMPLIED WARRANTY OF SEAWORTHINESS

36.     Great Lakes realleges and reincorporates the allegations set forth in paragraphs 1 through 35 above as if more fully set forth at length herein.

37.     Under the general maritime law of the United States, there is implied in every policy of marine insurance an absolute warranty that the vessel will be seaworthy at the inception of the risk.

38.     The Vessel was unseaworthy due to the combination of factors set forth above— namely, a garage door that was close to the waterline and not watertight and an aft bulkhead that was not watertight.

39.    The aforementioned condition existed at the time the Vessel was built.

40.    The aforementioned condition existed at the inception of the Policy.

41.    Accordingly, PK Yacht breached the absolute warranty of seaworthiness implied in the Policy which renders the Policy void.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare the following:

    a.   The Vessel was unseaworthy as of December 6, 2018;

    b.   The Vessel was unseaworthy as of February 17, 2019;

    c.   There is no coverage afforded by the Policy and is void *ab initio*;

    d.   The loss and/or damage to the Vessel is excluded from coverage under the implied absolute warranty of seaworthiness under the general maritime law; and

    e.   Grant any other relief this Honorable Court may deem just and proper.

## COUNT II – BREACH OF THE EXPRESS WARRANTY OF SEAWORTHINESS

42.    Great Lakes realleges and reincorporates the allegations set forth in paragraphs 1 through 35 above as if more fully set forth at length herein.

43.    The Policy issued to PK Yacht by Great Lakes contains an express warranty of seaworthiness, which states that "It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception."

44.    The Vessel was unseaworthy due to the combination of factors set forth above— namely, a garage door that was close to the waterline and not watertight and an aft bulkhead that was not watertight.

45.    The aforementioned condition existed at the time the Vessel was built.

46.     The aforementioned condition existed at the inception of the Policy.

47.     The aforementioned condition existed at the time the Vessel partially sank on February 17, 2019.

48.     Accordingly, PK Yacht breached the express warranty of seaworthiness as set forth in the Policy.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare the following:

      a.   The Vessel was unseaworthy as of December 6, 2018;

      b.   The Vessel was unseaworthy as of February 17, 2019;

      c.   There is no coverage afforded by the Policy and is void *ab initio*;

      d.   The loss and/or damage to the Vessel is excluded from coverage under the express warranty of seaworthiness as contained in the Policy; and

      e.   Grant any other relief this Honorable Court may deem just and proper.

## COUNT III – EXCLUSION FOR MANUFACTURING AND/OR DESIGN DEFECT

49.     Great Lakes realleges and reincorporates the allegations set forth in paragraphs 1 through 35 above as if more fully set forth at length herein.

50.     The Policy excludes losses and/or damages incurred directly or indirectly by manufacturing defects or design defects, including latent defects.

51.     The lack of watertight seals on the garage, as well as the aft bulkhead, are manufacturing and/or design defects that rendered the Vessel at high risk of taking on water.

52.     The loss and/or damage to the Vessel on February 17, 2019 was proximately caused by these manufacturing and/or design defects.

53.     The loss and/or damage to the Vessel was thus incurred directly by a cause expressly excluded by the Policy.

54.     There is no insurance coverage for PK Yacht's claim because the claimed damages were incurred directly or indirectly by an excluded cause of loss.

WHEREFORE, Great Lakes respectfully requests this Honorable Court to adjudge and declare the following:

a.      The loss and/or damage to the Vessel was proximately caused by her unseaworthy condition no later than February 17, 2019 and/or by manufacturing or design defects and there is no coverage for the loss she sustained on or about February 17, 2019;

b.      Policy exclusion e. excludes damages caused by manufacturing and/or design defects;

c.      The loss and/or damage to the Vessel was proximately caused by such manufacturing and/or design defects;

d.      The loss and/or damage to the Vessel is not covered by, but is excluded from coverage by exclusion e.; and

e.      Grant any other relief this Honorable Court may deem just and appropriate.

DATED: May 3, 2019

By: Timothy W. Strickland
Texas Bar No. 19396298
strick@sbsblaw.com

**SCHOUEST,   BAMDAS,   SOSHEA   &
BENMAIER P.L.L.C.**

8

1001 McKinney Street
Suite 1400
Houston, TX 77002
Phone: (713) 588-0446
Facsimile: (713) 574-2942

-and-

By: Charles S. Davant (*Pro Hac Vice Admission Pending*)
csd@davantlaw.com
Aaron M. Dmiszewicki (*Pro Hac Vice Admission Pending*)
amd@davantlaw.com

**DAVANT LAW, P.A.**
401 E. Las Olas Blvd.
Suite 1400
Fort Lauderdale, FL 33301
Phone: (954) 414-0400
Facsimile: (954) 332-3301

Attorneys for GREAT LAKES INSURANCE
SE

9

"APPENDIX TO COMPLAINT"



**Concept** Special Risks

# Policy Endorsement

| | |
|---|---|
| **Policy Number:** | CSRYP/171797 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 1 |
| **Assured:** | PK Yacht Operations |
| **Assured's Address:** | 900 Blue Mound Rd E<br>Haslet<br>TX 76052<br>USA |
| **Assured's Agent:** | Hanham Insurance Agency<br>27 Charlotte Street<br>Charleston<br>SC 29403 |

It is hereby noted and agreed that with effect from Thursday December 6, 2018

Coverage is extended to include one paid crew at limit $1,000,000 deductible $2,500 within Combined Single Limit.

In consideration of which, an Additional Premium of ████████ is due.

All other terms and conditions remain unaltered.

| | |
|---|---|
| **Insurance Provider:** | Great Lakes Insurance SE |
| **Signed:** | Wednesday April 17, 2019 |

http://yachts-sys:80/user/edit/util.cgi?signature=277
For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

**Concept Special Risks Ltd**
+44 (0) 1943 882 700  ·  www.special-risks.com
Unity House  ·  2 Station Court  ·  Station Road  ·  Guiseley  ·  LEEDS  ·  LS20 8EY  ·  United Kingdom

Exhibit A



# Policy Endorsement

| | |
|---|---|
| **Policy Number:** | CSRYP/171797 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 2 |
| **Assured:** | PK Yacht Operations |
| **Assured's Address:** | 900 Blue Mound Rd E |
| | Haslet |
| | TX 76052 |
| | USA |
| **Assured's Agent:** | Hanham Insurance Agency |
| | 27 Charlotte Street |
| | Charleston |
| | SC 29403 |

It is hereby noted and agreed that with effect from Thursday December 27, 2018

In consideration of the additional premium charged underwriters agree that the use of the Scheduled Vessel is amended to include Captain Charter with a maximum of six passengers and two paid crew. Furthermore, the Insuring Agreement Wording is amended to: Standard Yacht Insuring Agreement as per attached SYP/8/COM.

In consideration of which, an Additional Premium of ▮▮▮▮▮▮ is due.

All other terms and conditions remain unaltered.

| | |
|---|---|
| **Insurance Provider:** | Great Lakes Insurance SE |
| **Signed:** | Wednesday April 17, 2019 |

http://yachts-sys:80/user/edit/util.cgi?signa-
ture=277
For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

Concept Special Risks Ltd
+44 (0) 1943 882 700  ·  www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom

Page 2

# Commercial Yacht Insuring Agreement

## 1. DEFINITIONS

a. 'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

b. 'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c. 'Covered person,' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us in writing as an operator of the Scheduled Vessel.

d. 'Scheduled Vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the Scheduled Vessel, which would normally be sold with the vessel. This does not include spare parts of the Scheduled Vessel, the Scheduled Vessel's life raft, tender or dinghy unless the same has been declared on the declaration page, nor does it include any items being stored on premises other than on-board the Scheduled Vessel.

e. 'Trailer' refers to the Scheduled Vessel's trailer, used exclusively for that purpose.

f. Words of a masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g. 'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h. 'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section A of your insuring agreement.

i. 'Deductible' is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount shall be deducted from the amount payable on each admissible claim.

j. 'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the Scheduled Vessel.

k. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l. 'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m. 'Personal Property' means property purchased and owned by you, any covered person, any

member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled Vessel as defined in (d) above.

n. 'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies. 'Preparing for a race or speed trial' means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o. 'Named Windstorm' damage is damage relating to or resulting from a named or any numbered tropical weather pattern from the time the named windstorm or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the named windstorm or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p. 'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q. 'Operate, operation, operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel.

r. 'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged under water.

s. 'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the Scheduled Vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

t. 'Agreed Value' means the sum insured under Section A of the insuring agreement declaration page or any endorsement to the same.

u. 'Combined Single Limit' (CSL) means the maximum amount we will pay towards any sum or sums that you or any other covered person become legally liable to pay and shall pay as a result of any one accident or occurrence arising from your operation of the Scheduled Vessel. If the insuring agreement declaration page shows multiple liability limits, the maximum amount we will pay in total in respect of any one accident or occurrence or series of accidents or occurrences arising from a single event, is limited to the amount shown as the Combined Single Limit irrespective of the number of claims or claimants arising from the said accident, occurrence or single event and in no circumstances shall there be any aggregation of liability limits shown on the insuring agreement declaration page in excess of the Combined Single Limit hereunder.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

### 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

If a sum insured is shown for 'Non Emergency Towing' on the insuring agreement declaration page, this represents the maximum amount per incident or event and for the duration of this policy, that we will pay in respect of expenses incurred by you for such charges, where the Scheduled Vessel is in no immediate danger but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.

We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

If the Scheduled Vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person. In no case shall our maximum liability exceed the sum insured hereunder.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or comprom-ised total loss of the Scheduled Vessel, unless arising from a named windstorm when the deductible detailed below shall apply.

Loss or damage to the Scheduled Vessel arising from a named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including actual and/or constructive and/or compromised total loss of the insured vessel, equal to double the deductible as shown on the declaration page under Sections A and/or F of the insuring agreement.

### Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a. Loss of or damage sustained by the Scheduled Vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 250 miles from the normal place of storage, as disclosed within your application form.

b. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c. Marring, scratching or denting of the hull and/or equipment of the Scheduled Vessel.

d. Osmosis, blistering or electrolysis.

e. Manufacturing defects or design defects, including latent defects.

f. Un-repaired damage claims if the Scheduled Vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g. Losses caused directly or indirectly by ice or freezing.

h. Loss or damage caused intentionally by you and/or any member of your family.

i. Theft of the Scheduled Vessel and/or its equipment whilst on a trailer unless the Scheduled Vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and/or removal made by tools, explosives, electricity or chemicals.

j. Your personal expenses or those of your family including but not limited to the cost of your own labour, hotel or accommodation costs, car rental and communication costs.

k. Losses caused by delay in repairs and/or loss of use and/or enjoyment of the Scheduled Vessel and/or its equipment.

l. Loss and/or damage to sails, sail covers, external canvases, including but not limited to Bimini Tops, arising from a named windstorm unless properly removed and stowed.

m. Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being effected as a result of any claim hereunder.

n. Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

o. Loss or damage to the Scheduled Vessel and/or its equipment where you have abandoned the Scheduled Vessel without damage which would have resulted in a payable claim hereunder.

p. Loss of or damage to the Scheduled Vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the Scheduled Vessel by any repair yard.

q. The loss of or replacement of fuel or perishable goods that are on board the Scheduled Vessel at the time of loss.

r. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

## 4. Coverage B. Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary. Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

**Exclusions to Coverage B**

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a. Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b. Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c. Liability assumed by you under any contract or agreement.

d. Liability which arises while the Scheduled Vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e. Fines or penalties imposed by any Government agency.

f. Punitive or exemplary damages however described.

g. Liability due to pollution by any substance whether it be gradual, or sudden and accidental except as provided for in the Pollution Coverage Extension of this Insuring Agreement.

h. Intentional acts.

i. Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j. Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k. Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the Scheduled Vessel, until they are safely back on board, other than that provided under limited extension of liability for waterskiing detailed in Coverage B Water Skiing Coverage Limitation of Liability.

Liability to or for divers operating from the Scheduled Vessel, from the time they commence to leave the Scheduled Vessel, until they are safely back on board.

m. Liability to fare paying passengers or passengers carried under charter.

n. Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o. Loss or damage to any other vessel caused by the operation of the Scheduled Vessel in so far as the same would have been covered under Section A of this insuring agreement.

o. Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

q. Any claim arising from directly or indirectly caused by or associated with Human Immunodeficiency Virus (HIV) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

**Coverage B, Water Skiing Coverage Limitation of Liability**

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

| | |
|---|---|
| **Property damage** | US$ 0 |
| **Bodily Injury** | US$ 0 |
| **Maximum any one incident** | US$ 0 |

These limits shall apply from the time any person or persons begin to leave the Scheduled Vessel, or such activity commences, and will continue until the person or persons are safely back on board and such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion (k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

**Coverage B, Extension to include Crew Liability**

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit. All other terms, warranties, conditions, and exclusions remain unaltered and in effect save for exclusion (i) and exclusion (j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

**Coverage B, Extension to include Commercial Passenger Liability**

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover all sums which you become legally liable to pay and shall pay to fare paying passengers or passengers carried under charter as a result of your ownership or operation of the Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you using attorneys of our choice where we deem necessary. The maximum amount recoverable in respect of Passenger

Liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit.

The deductible shown on the insuring agreement declaration page shall apply to each passenger liability claim.

All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion (m) above.

**Coverage B, Extension to include Limited Pollution Coverage**

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

    a. Was sudden, unintentional and unexpected by you.

    b. That the incident commenced during the period of this insuring agreement.

    c. It became known to you within 72 hours of its commencement.

    d. Was reported to us in writing not later than seven days after having become known to you.

    e. Was not a result of your want of due diligence of that or your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

**5. Coverage C, Medical Payments**

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or on-board the Scheduled Vessel insured under this insuring agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

**Exclusions to Coverage C**

We do not provide medical payment coverage for:

a. Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b. Responsibility assumed under any contract or agreement.

c. Anyone injured whilst the Scheduled Vessel is being transported, hauled out or launched.

d. Trespassers on the Scheduled Vessel.

e. Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

**6. Coverage D, Uninsured Boaters**

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

We will also pay any medical expenses incurred by your lawful guests and invitees (including members of your family) as a result of any such incident giving rise to claim under this section

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

**Exclusions to Coverage D**

We do not provide coverage for:

a. Claims settled without our prior written consent.

b. Loss due to an uninsured vessel which is a Government vessel.

c. Loss due to a vessel owned and/or operated by a covered person.

d. Loss where no physical damage to the Scheduled Vessel exists, evidencing collision.

e. Any loss or damage otherwise recoverable under this insuring agreement.

f. Bodily injury, illness or death of any covered person.

g. Any loss otherwise excluded by any provision of this Insuring Agreement.

Policy CSRYP/171797 Endorsement 2 · Concept Special Risks                          10

### 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the Scheduled Vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible. Our maximum liability for such expenses is 50% of the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

A deductible of 10% of the agreed value of the Scheduled Vessel trailer shall apply to each theft loss, including total loss of the trailer. However a deductible of 5% of the agreed value of the trailer shall apply to each theft loss, including total loss, provided the scheduled trailer is stored in a commercial storage yard or marina that provides 24 hour security.

### Exclusions to Coverage E

a. Damages sustained by the trailer whilst the Scheduled Vessel is being transported over land, more than 250 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b. Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould, animal or marine life.

c. Marring, scratching or denting.

d. Manufacturing defects or design defects, including latent defects.

e. Tyre damage.

f. Losses due to exceeding manufacturer's maximum load or speed specifications.

g. Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h. Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

### 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct physical loss or damage to personal property from any accidental cause, whilst property is

onboard, being loaded onto, or unloaded from the Scheduled Vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$ 0.

Fishing gear and tackle, unless permanently affixed to the Scheduled Vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss.

**Exclusions to Coverage F**

We will not cover loss or damage to or in respect of:

  a. Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

  b. Fishing gear or tackle which is permanently affixed to the Scheduled Vessel, unless the Scheduled Vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

  c. Food and/or perishable items, including any type of fuel.

We will not cover losses due to:

  a. Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

  b. Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

  c. Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel.

  d. Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

**9. General Conditions & Warranties**

  a. It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

  b. This insuring agreement incorporates in full your application for insurance and together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

  c. This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the Scheduled Vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the Scheduled Vessel arrives safely at its next port of call and for a

further 24 hours, provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

d. This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the Scheduled Vessel, and then pro rata or short rate applied. Cancellations due to sale of the Scheduled Vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

e. If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

f. In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

g. If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

h. We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

i. It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall we be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

j. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

k. If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

l. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

m. We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under

extension of Section B limited pollution coverage) iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these iv) capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

Unless we specifically agree in writing and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either:

> The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyor's) satisfaction prior to any loss and/or claim

> Or,

> The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

No suit or action on this insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such State.

Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

Where a lay-up 'laid up period' has been specified within the declaration page, it is warranted that the Scheduled Vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified. 'Use' includes, but is not restricted to, living on board the Scheduled Vessel.

The Scheduled Vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible. Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

i. Internal and/or external paints, finishes, gelcoat or other covering — 10% per annum.

ii. Bottom paint including but not limited to anti-foul or barrier coat finishes — 50% per annum.

iii. Sails, standing and running rigging — 12.5% per annum.

iv. Internal and/or external protective covers, canvas, vinyl and other materials and their frames — 20% per annum.

v. Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs — 10% per annum.

vi. Machinery including but not limited to engines, generators, water makers and waste systems — 7% per annum.

vii. Outboard Motors — 20% per annum.

viii. Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers — 20% per annum.

ix. Batteries and solar charging panels — 20% per annum.

x. Electrical equipment including but not limited to internal and external appliances, navigational aids, depth sounders, winches, pump motors and electric deck gear — 10% per annum.

xi. Mast and spars — 5% per annum.

xii. Stanchions and lifelines — 10% per annum.

xiii. Inflatable tenders, dinghies or life rafts — 12.5% per annum.

xiv. Hard FRP, composites, aluminium or wood tenders, dinghies or life rafts — 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

v. We have the right to either pay you the reasonable costs of repairs of your vessel or we will declare your vessel a constructive total loss. Where we have paid the agreed value of your vessel to you as a result of our declaring the Scheduled Vessel a constructive total loss, you will, at our request, transfer title to the Scheduled Vessel either to us or to our designated or named nominee. We will provide you with the option to retain title to the Scheduled Vessel should you match or better the highest bid to purchase the vessel that we receive. We may offset any claim payment due to you against such sum due should you retain title to the Scheduled Vessel in accordance with the

above.

w. It is warranted that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters. Such approval not to be unreasonably withheld.

x. Where you are entitled to limit your liability to third parties the maximum recoverable under Section 4 Coverage B, Third Party Liability herein, is the amount you become legally liable to pay or the limit of coverage shown under Section B of the insuring agreement declaration page, whichever is the lesser amount.

y. Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1. Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss. Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2. Within 30 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

3. Comply with any reasonable request made of you, by us with regard to the loss.

4. Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5. Give us an opportunity to examine the damaged property before it is repaired or discarded.

6. Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7. Neither assume obligation, nor admit liability without our written permission to do so.

8. Immediately forward to us any legal papers or notices received in connection with the loss.

9. Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10. Allow examination by physicians of our choice.

11. Assist us in obtaining copies of medical records and reports.

12. Give us a notarised statement or statutory declaration if we so request.

13. Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14. Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses. You must also

co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit, Choice Of Law And Forum

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

a. the Assured may serve process upon any senior partner in the firm of:

> Mendes & Mount, LLP
> 750 7th Avenue
> New York, NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b. The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c. Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

This wording is the property of Concept Special Risks Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of Concept Special Risks Ltd. Concept Special Risks Ltd will seek legal redress from any person or persons found to have infringed their copyright



# Policy Schedule

| | |
|---|---|
| **Policy Number:** | CSRYP/171797 |
| **Assured:** | PK Yacht Operations |
| **Assured's Address:** | 900 Blue Mound Rd E<br>Haslet<br>TX 76052<br>USA |
| **Assured's Agent:** | Hanham Insurance Agency<br>27 Charlotte Street<br>Charleston<br>SC 29403 |
| **Scheduled Vessel:** | ECJ Luxe, 2001 89' Arno Leopard with MTU twin 1800hp diesel engine,<br>PLEASE SUPPLY |

| **Period of Cover:** | from December 6, 2018 00.01 LST to December 6, 2019 00.01 LST |
|---|---|

**Cover and Respective Insured Limits:**

| Section | Sum Insured | Deductible |
|---|---|---|
| **A Hull** | US$ 1,000,000 | US$ 40,000 |
| (Named Windstorm Deductible) | | US$ 80,000 |
| Non-Emergency Towing | US$ 2,500 | not applicable |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 500 |
| **C Medical Payments** | US$ 25,000 | US$ 100 |
| **D Uninsured Boaters** | US$ 1,000,000 | not applicable |
| **E Trailer** | not covered | not applicable |
| **F Personal Property** | not covered | not applicable |

| | |
|---|---|
| **Total Premium:** | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |
| | In the event of cancellation by the Assured minimum of 25% of premium<br>deemed earned. |
| **Named Operators:** | Steven Helling; Keith Edward Hyatt |
| **Laid Up Period:** | None |
| **Navigational Limits:** | Warranted that the Scheduled Vessel is confined to Florida - not to exceed<br>150 miles offshore. |

**Concept Special Risks Ltd**
+44 (0) 1943 882 700 · www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom

Policy Schedule CSRYP/171797 page 2                                    Concept Special Risks Ltd

**Insuring Agreement Wording:**

As per SYP/8/PPO

**Additional Warranties, Terms and Conditions:**

Warranted that a minimum of two persons to be on board whenever the Scheduled Vessel is navigating in order to assist with the safe operation of the Scheduled Vessel.

**Insurance Provider:**      Great Lakes Insurance SE

**Loss Payee:**              Assured

**Signed:**                  Tuesday December 18, 2018

For and on behalf of Participating Underwriters/Insurers

Surplus lines insurers' policy rates and forms are not approved by any Florida regulatory agency.

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

## PRIVATE AND PLEASURE YACHT INSURING AGREEMENT

## 1. DEFINITIONS

a)      'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

b)      'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c)      'Covered person' means you, and/or any person detailed on your application form which has been submitted by you and approved by us, provided that person has been declared to us as an operator of the Scheduled Vessel.

d)      'Scheduled Vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the Scheduled Vessel, which would normally be sold with the vessel. This does not include spare parts of the Scheduled Vessel, the Scheduled Vessel's life raft, tender or dinghy, unless the same has been  declared on the declaration page, nor does it include any items being stored on premises other than on-board the Scheduled Vessel.

e)      'Trailer' refers to the Scheduled Vessel's trailer, used exclusively for that purpose.

f)      Words of a masculine gender are deemed to encompass the female gender and vice versa.  Words in the singular are deemed to encompass the plural and vice versa.

g)      'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h)      'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section A of your insuring agreement.

i)      'Deductible' is the first amount of any claim, which must be paid by you.  If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount will be deducted from the amount payable on each admissible claim.

j)      'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the Scheduled Vessel.

k)      'Seaworthy' means fit for the Scheduled Vessel's intended purpose.  Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew.  For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l)      'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m)      'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled Vessel as defined in (d) above.

n)   'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies.  'Preparing for a race or speed trial' means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o)   'Named Windstorm' damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the named windstorm or numbered tropical weather pattern impacts the area and until 72 hours later. The area of the named windstorm or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p)   'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q)   'Operate, Operation, Operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel.

r)   'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged underwater.

s)   'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the Scheduled Vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

t)   'Agreed Value' means the sum insured under Section A of the insuring agreement declaration page or any endorsement to the same.

u)   'Combined Single Limit' (CSL) means the maximum amount we will pay towards any sum or sums that you or any other covered person become legally liable to pay and shall pay as a result of any one accident or occurrence arising from your operation of the Scheduled Vessel.  If the insuring agreement declaration page shows multiple liability limits, the maximum amount we will pay in total in respect of any one accident or occurrence or series of accidents or occurrences arising from a single event, is limited to the amount shown as the Combined Single Limit irrespective of the number of claims or claimants arising from the said accident , occurrence or single event and in no circumstances shall there be any aggregation of liability limits shown on the insuring agreement declaration page in excess of the Combined Single Limit hereunder.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you.  We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or accidental physical damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss incurred and covered by this insuring agreement will be paid by us whether successful or not. These will be paid in addition to the sum

insured under Sections A and F.   Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

If a sum insured is shown for "Non Emergency Towing" on the insuring agreement declaration page, this represents the maximum amount per incident or event and for the duration of this policy, that we will pay in respect of expenses incurred by you for such charges, where the Scheduled Vessel is in no immediate danger, but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.
We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

If the Scheduled Vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the Scheduled Vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person.  In no case shall our maximum liability exceed the sum insured hereunder.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive and/or compromised total loss of the Scheduled Vessel. In the event of loss or damage arising from a named windstorm the deductible detailed below shall apply.

Loss or damage to the Scheduled Vessel arising from a named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including actual and/or constructive and/or compromised total loss of the insured vessel, equal to double the deductible as shown on the declaration page under Sections A and/or F of the insuring agreement.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:

a)     Loss of or damage sustained by the Scheduled Vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 250 miles from the normal place of storage, as disclosed within your application form.

b)     Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c)     Marring, scratching or denting of the hull and/or equipment of the Scheduled Vessel.

d)     Osmosis, blistering or electrolysis.

e)     Manufacturing defects or design defects, including latent defects.

f)     Unrepaired damage claims if the Scheduled Vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g)     Losses caused directly or indirectly by ice or freezing.

h)      Loss or damage caused intentionally by you and/or any member of your family.

i)      Theft of the Scheduled Vessel and or its equipment whilst on a trailer unless the Scheduled Vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

j)      Your personal expenses or those of your family including but not limited to the, cost of your own labour, hotel or accommodation costs, car rental and communication costs.

k)      Losses caused by delay in repairs and/or loss of use and/or enjoyment of the Scheduled Vessel and/or its equipment.

l)      Loss and/or damage to sails, sail covers, external canvases, including but not limited to Bimini Tops, arising from a named windstorm unless properly removed and stowed

m)      Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being effected as a result of any claim hereunder.

n)      Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

o)      Loss or damage to the Scheduled Vessel and/or its equipment where you have abandoned the Scheduled Vessel without damage which would have resulted in a payable claim hereunder.

p)      Loss of, or damage to the Scheduled Vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the Scheduled Vessel by any repair yard.

q)      The loss of or replacement of fuel or perishable goods that are on board the Scheduled Vessel at the time of loss.

r)      Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

## 4. Coverage B.  Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person become legally liable to pay and shall pay as a result of ownership or operation of the Scheduled Vessel.

We will settle or defend as we deem appropriate any claims or suits brought against you, using attorneys of our choice where we deem necessary.  Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

## Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)   Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)   Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)   Liability assumed by you under any contract or agreement.

d)   Liability which arises while the Scheduled Vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)   Fines or penalties imposed by any Government agency.

f)   Punitive or exemplary damages, however described.

g)   Liability due to pollution by any substance whether it be gradual, or sudden and accidental  except as provided for in the Pollution Coverage Extension of this Insuring Agreement.

h)   Intentional acts.

i)   Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j)   Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)   Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the Scheduled Vessel, until they are safely back on board, other than that provided under limited extension of liability for water-skiing detailed in Coverage B Water Skiing Coverage Limitation of Liability.

l)   Liability to or for divers operating from the Scheduled Vessel, from the time they commence to leave the Scheduled Vessel, until they are safely back on board.

m)   Liability to fare paying passengers or passengers carried under charter.

n)   Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)   Loss or damage to any other vessel caused by the operation of the Scheduled Vessel in so far as the same would have been covered under Section A of this insuring agreement.

p)   Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

q)   Any claim arising from directly or indirectly caused by or associated with Human Immunodeficiency Virus (HIV) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

## Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the Scheduled Vessel, or such activity commences, and will continue until the person or persons are safely back on board and such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

## Coverage B, Extension to include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.
The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability and within the Combined Single Limit.  All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion i) and j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

## Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (g) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

a)      Was sudden, unintentional and unexpected by you.

b)      That the incident commenced during the period of this insuring agreement.

c)      It became known to you within 72 hours of its commencement.

d)      Was reported to us in writing not later than seven days after having become known to you.

e)      Was not a result of your want of due diligence or that or your managers, servants or agents to prevent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder.  Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability and within the Combined Single Limit.

## 5. Coverage C, Medical Payments

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or on-board the Scheduled Vessel insured under this insuring agreement.  These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved.  Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

## Exclusions to Coverage C

We do not provide medical payment coverage for:

a)      Covered persons, their spouses, family or other persons who reside with them.  Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)      Responsibility assumed under any contract or agreement.

c)      Anyone injured whilst the Scheduled Vessel is being transported, hauled out or launched.

d)      Trespassers on the Scheduled Vessel.

e)      Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

We will also pay any medical expenses incurred by your lawful guests and invitees (including members of your family) as a result of any such incident giving rise to claim under this section

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

## Exclusions to Coverage D

We do not provide coverage for:

a)      Claims settled without our prior written consent.

b)      Loss due to an uninsured vessel which is a Government vessel.

c)      Loss due to a vessel owned and/or operated by a covered person.

d)      Loss where no physical damage to the Scheduled Vessel exists, evidencing collision.

e)      Any loss or damage otherwise recoverable under this insuring agreement.

f)      Bodily Injury, illness or death of any covered person.

g)      Any loss otherwise excluded by any provision of this Insuring Agreement.

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or physical damage to the trailer if it is used exclusively for the transportation of the Scheduled Vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value.  Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to avert or minimise a loss covered by this insuring agreement will be paid by us, whether successful or not.  These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible.  Our maximum liability for such expenses is the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual or constructive total loss of trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the insuring agreement.

A deductible of 10% of the agreed value of the Scheduled Vessel trailer shall apply to each theft loss, including total loss of the trailer.  However a deductible of 5% of the agreed value of the trailer shall
apply to each theft loss, including total loss, provided the scheduled trailer is stored in a commercial storage yard or marina that provides 24 hour security.

## Exclusions to Coverage E

a)      Damages sustained by the trailer whilst the Scheduled Vessel is being transported over land, more than 250 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b)      Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c)      Marring, scratching or denting.

d)    Manufacturing defects or design defects, including latent defects.

e)    Tyre damage.

f)    Losses due to exceeding manufacturer's maximum load or speed specifications.

g)    Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h)    Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the Scheduled Vessel.  Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$1,000.

Fishing gear and tackle, unless permanently affixed to the Scheduled Vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss.

## Exclusions to Coverage F

We will not cover loss or damage to or in respect of

a)    Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b)    Fishing gear or tackle which is permanently affixed to the Scheduled Vessel, unless the Scheduled Vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

c)    Food and or perishable items, including any type of fuel.

We will not cover losses due to:

a)    Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b)    Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c)    Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel.

d)   Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

a)   It is warranted that the Scheduled Vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b)   It is warranted that the Scheduled Vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

c)   This insuring agreement incorporates in full your application for insurance and, together with any endorsements issued herein constitutes the entire contract between us.   At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

d)   This insuring agreement does not cover any loss or damage which occurs after its expiration.  However, if you have been at sea in the Scheduled Vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the Scheduled Vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

e)   This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice.  If it is cancelled by us, we will pay you a pro rata return of premium.  If it is cancelled by you, we shall pay you a short rate return of premium calculated at pro rata less 10%.  However if a reduced premium has been charged in consideration of a period of lay up or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied.  Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you.  All policy fees are deemed earned at the inception of the policy.

f)   If you sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

g)   In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

h)   If you have used a broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

i)   We need not accept or pay for any property abandoned by you.  At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

j)   It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall we be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose us to any sanction, prohibition

or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

k)      If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

l)      If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

m)      This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

n)      We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under extension of Section B Limited Pollution Coverage) iii) war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these iv) capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

o)      If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

p)      If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

q)      Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

r)      Unless we agree in writing to the contrary, if we request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement.  If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

        1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

        Or,

        2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

s)      No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this insuring agreement is issued, then, and in that event, no suit or action

under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such State.

t) Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

u) Where a lay-up 'laid up period' has been specified within the declaration page, it is warranted that the Scheduled Vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.  'Use' includes, but is not restricted to, living on board the Scheduled Vessel.

v) The Scheduled Vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the  basis of depreciated cash value less the applicable deductible .Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows;

   i)     Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum.
   ii)    Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum.
   iii)   Sails, standing and running rigging - 12.5% per annum.
   iv)    Internal and/or external protective covers, canvas, vinyl and other materials and their frames – 20% per annum.
   v)     Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum.
   vi)    Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum.
   vii)   Outboard Motors - 20% per annum.
   viii)  Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers - 20% per annum.
   ix)    Batteries and solar charging panels - 20% per annum.
   x)     Electrical equipment including but not limited to internal and external appliances, navigational aids, depth sounders, winches, pump motors and electric deck gear  - 10% per annum.
   xi)    Mast and spars – 5% per annum.
   xii)   Stanchions and lifelines – 10% per annum.
   xiii)  Inflatable tenders, dinghies or life rafts – 12.5% per annum.
   xiv)   Harp FRP, composites, aluminium or wood tenders, dinghies or life rafts – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciated value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

w) We have the right to either pay you the reasonable costs of repairs of your vessel or we will declare your vessel a constructive total loss. Where we have paid the agreed value of your vessel to you as a result of our declaring the Scheduled Vessel a constructive total loss, you will, at our request, transfer title to the Scheduled Vessel either to us or to our designated or named nominee. We will provide you with the option to retain title to the Scheduled Vessel should you match or better the highest bid to purchase the

vessel that we receive.  We may offset any claim payment due to you against such sum due should you retain title to the Scheduled Vessel in accordance with the above.

x)    It is warranted that the Scheduled Vessel will be operated only by covered persons. However, in the event of an incident occurring when the vessel is being operated by any person other than a covered person that may give rise to a claim under this insurance, you have a period of seven days following such an incident to submit details of the operator for retroactive approval by underwriters, such approval not to be unreasonably withheld.

y)    Where you are entitled to limit your liability to third parties the maximum recoverable under Section 4 Coverage B, third party liability herein, is the amount you become legally liable to pay or the limit of coverage shown under Section B of the insuring agreement declaration page, whichever is the lesser amount.

z)    Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1)    Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss.  Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2)    Within 30 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

3)    Comply with any reasonable request made of you, by us with regard to the loss.

4)    Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5)    Give us an opportunity to examine the damaged property before it is repaired or discarded.

6)    Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7)    Neither assume obligation, nor admit liability without our written permission to do so.

8)    Immediately forward to us any legal papers or notices received in connection with the loss.

9)    Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10)    Allow examination by physicians of our choice.

11)    Assist us in obtaining copies of medical records and reports.

12)    Give us a notarised statement or statutory declaration if we so request.

13)    Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14)     Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses. You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service of Suit, Choice of Law And Forum

**It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America , in particular,  the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

a)      the Assured may serve process upon any senior partner in the firm of:

Mendes & Mount, LLP
750 7th Avenue
New York, NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)      The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c)      Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

This wording is the property of Concept Special Risks Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of Concept Special Risks Ltd.  Concept Special Risks Ltd will seek legal redress from any person or persons found to have infringed their copyright.

# Concept Special Risks Claim Leaflet

This company is incorporated and operates under the laws of the United Kingdom. We are based in Guiseley, West Yorkshire, within the United Kingdom and act as Underwriting Agents for the Insurers. We were formerly T L Dallas (Special Risks) Ltd. but changed our name in May 2008 to Osprey Special Risks Limited and subsequently to Concept Special Risks Limited in 2013. All of our contact details remain the same as before and the company enjoys the same excellent reputation throughout the insurance market. Full details can be obtained by clicking on our web site or searching the records at Companies House Cardiff, United Kingdom. www.companieshouse.gov.uk

**When my vessel is repaired will I receive all the repair costs less my deductible?**
We will place your vessel in the same condition it was in before your loss, in so far as it is possible. What this means is that we will apply depreciation to costs that have been agreed as fair and reasonable. The way and manner we apply depreciation is set out within the insuring agreement. This policy is not new for old and this is the reason that we apply depreciation.

**What is my deductible?**
This is shown on your policy declaration page (headed "Cover Note") next to each heading of coverage afforded. This is the first amount of each claim that you must meet. To have a valid claim you must evidence that your repair costs exceed the deductible. If your vessel is damaged by a named windstorm then the amount of this deductible will be doubled.  Different deductibles also apply to theft losses.

**What is 'Salvage'?**
Salvage charges are defined by the insuring agreement as those reasonable charges and expenses that you incur "with our permission and consent" to prevent further loss and or damage to your vessel. We will pay these charges after application of your deductible.

**What is the difference then between 'Salvage charges' and 'Sue and Labor'?**
One is incurred with our knowledge and consent; the other is as a result of steps taken by you without our knowledge and consent. Salvage will refer to an express agreement with a third party to "salve" your vessel. We are generally in a better position to agree terms with professional salvors than you are. If you are unable to reach us, then be wary of accepting terms from salvors that are simply presented to you in the form of their written form of salvage agreement. Do not sign this agreement unless you are certain that you understand what it means and that the charges being made are fair and reasonable. If the salvor refuses to assist you unless you sign then make sure that you record the agreement as having being "executed under protest".

**Can anyone else apart from me and my spouse operate my vessel?**
Only if we have agreed to this. This is a named operator only policy. In order to cover any operator we require full details of their boating experience, loss record and details of any violation/suspension including auto within the last five years. Please contact endorse@special-risks.co.uk

**What is a lay-up period?**
This is the period of time within which it has been agreed that a vessel will not be operated in any manner whatsoever. We will either agree to a lay-up of your vessel afloat or on land. In exchange for this, you may receive a reduced premium. In the event that you do operate your vessel during this period you will not be covered for any losses or damage.

**What does miles offshore mean?**
Where we have advised a miles offshore limit this mean that this is the farthest your vessel must be from land (within your defined navigation limits). For example: Lake Michigan only – not to exceed 15 miles offshore.

**Am I covered for losses I sustain as a result of me not being able to use the vessel during the repair process?**
No. This type of loss is specifically excluded.

**Will Insurers arrange repairs or recovery in the event of a loss?**
This is an indemnity policy which means that the insured makes the repair and recovery arrangements and Insurers will refund the agreed amount. However, it may be possible to arrange advance payments to repairers in the event of a major loss but this is entirely at our discretion.

**What if I sell my vessel during the policy period?**
This automatically cancels your policy immediately unless you have our agreement to the contrary. You should tell us if you are selling your vessel and upon what date ownership will pass. You will receive an appropriate short rate return of premium. **You cannot transfer your insurance with title to your vessel.**

**What must I do during the duration of the policy period?**
You must properly maintain your vessel **at all times** throughout the term of your policy and ensure that it is seaworthy. This is very important because if it is subsequently determined that your vessel has not been maintained in a seaworthy state then your entire policy may be prejudiced and not just the particular claim. A marine surveyor can help you with this and advise you whether your vessel is seaworthy. Make sure your surveyor is a member of an organisation such as the Society of Marine Surveyors "SAMS" or some other recognised body. You must also comply with any regulations covering the use of your vessel i.e. the Coastguard. You must obey any law relating to the use and ownership of your vessel. You must not use your vessel for any illegal or unlawful activity and you must not allow others to do so either. You must not operate your vessel whilst under the influence of alcohol or drugs.

**Is my engine covered and other mechanical and electrical items?**
You have to show that the damage was sustained as a result of some accident and or fortuity that befell you as a result of the operation and or management of your vessel. Engines especially do not last forever and sooner or later will require attention. This is part of general maintenance. This policy will not cover you for normal wear and tear.

**What happens if I take my vessel outside of the navigational limits?**

CSR/CL/2

You have already agreed that you will only operate your vessel within a strict area. If you break that agreement we will not pay for any losses that you sustain. Ensure that you properly understand where you can operate and where you may not operate your vessel.

**Can I charge guests for taking them on a trip?**
Only if we have agreed to this, additional premium has been paid and a commercial policy has been issued.

**Treating Customers Fairly Policy Statement**
We are committed to treating customers fairly as a matter of good business and fair dealing. To achieve this, we give the following undertakings:

- We will take all reasonable steps to only do business professional intermediaries who are licensed by their local governmental authority to arrange insurance.
- We will ensure that all intermediaries that we do business with are provided with clear and full descriptions of the coverage we offer.
- Our policy documentation will be in accordance with market & regulatory standards.
- We will ensure that all claims are handled promptly and in accordance with the terms of the policy.
- We will only employ competent staff and will ensure that they are properly trained to carry out their jobs.

If for any reason, you feel that we have failed to meet the high standards that we have set ourselves, we would like to know and would encourage you to follow the complaints procedure set out below.

- Firstly, contact us in writing with the relevant department.
- Within 5 business days of receipt by us we should have sent you a written acknowledgement advising you of the person who will be dealing with your concerns.
- Within 20 business days we will provide you or you with a written response unless the matter is sufficiently complicated to require further investigation, in which case we will advise you of this in writing, with an explanation of why we cannot yet make a determination. We will also advise you of when you may expect our final response.

None of the above procedure in any way affects your right to legal advice or assistance or to seek assistance from your local insurance regulator.

**What to do in the event of an incident**
In the event of a Loss giving rise to damage to your vessel, time is of the essence, please immediately advise our Claims Department by e-mail to claim@special-risks.co.uk in the first instance. Under the policy you must report the incident within 30 days.

The following is intended for general guidance only in the event of a claim and is not intended as an exhaustive, final definition of coverage. Whether coverage is in force or not depends on the individual circumstances and facts surrounding each claim.

**The Policy**
The policy of marine insurance that has been issued to you is known as an "all risks" form of marine insurance policy. This covers you for any loss and or damage to your vessel that is accidental, fortuitous in nature and is incidental to the use of your vessel. **However, not all types of damage and or losses are covered.** The policy excludes some types of damage and incident and you should take time to study these carefully and understand how each exclusion could affect your coverage.

The policy exclusions are set out within the insuring agreement wording under the heading "exclusions to coverage A, B, C, D, E & F". The insuring agreement wording also contains general conditions and warranties that you should be familiar with, which if breached by you could affect coverage. You can obtain a copy of this form of policy from the Policy Wordings section on our website.

If you believe that you may have a claim under your policy above all else, do not delay in the proper presentation of your claim.

Steps to be taken in the event of a loss:

1. Notify us in writing that you have had an incident that may give rise to a claim under your policy.

2. Obtain a claim form for completion. Fully complete this form and submit it to us. If you are unable to obtain a claims form, explain fully in writing exactly what has happened and send this document.

Section 10. of the insuring agreement sets out what you should do in the event of loss of and or damage to your vessel (see "Your Duties in the event of a loss"). Please follow these steps, as any failure by you to do so could delay the processing of your claim and in some cases prevent a recovery.

All that is expected of you is that you act reasonably to preserve your vessel and its equipment from further damage. Consider what steps you would take if you didn't have insurance.

Once you have informed us of your claim, place a note in your diary and follow this up with you us if no one has contacted you within 7 days.

We may appoint a surveyor, who will arrange for the damage to your vessel to be inspected and who will then send a report to us as to the extent of the damage. The appointment of a surveyor is at our discretion and not every incident will require this. You are at liberty to appoint your own representative; however the costs of such representation may be disallowed. As not every incident will require a surveyor, it is very important that you do not simply wait for one to call you.

CSR/CL/2

Try to obtain at least two repair estimates for the damage to your vessel and send these to us as soon as they are available. You do not need our permission to begin repairs to your vessel; all you have to do is allow us a reasonable opportunity to assess the damage to your vessel.

If you delay in telling us about the loss, or carry out repairs to the vessel without giving us the opportunity to look at them first, this may affect your coverage.

**The Adjusting Process**
When a surveyor is appointed the cost of their fees rests with Insurers whether or not your claim is covered. The surveyor will examine the damage to your vessel that you tell us occurred as a result of the incident in question. They will produce a written report and send that to us. Because we pay the adjuster, the report remains our property and while we may release it at our discretion, we are not obliged to. The surveyor may sometimes give you guidance and assistance on your claim. You can appoint your own representative at any time to assist you to reach a settlement but as we have noted elsewhere, the cost of such representation will not always be allowed

**The Decision**
Once the surveyor has reported to us, we are usually in a position to provide a rapid decision on your claim. Once the repair estimates have been approved by us as fair and reasonable, we will make an offer to you to settle your claim. If you agree to our offer we will always ask you to sign a release document, which you should do in the presence of an attorney or Notary Public. Carefully read this document because once you have signed it we will only accept a further claim for the same incident in very exceptional circumstances.

If you are at all unhappy with the decision or any part of the claims process, please contact us to discuss your queries. If you still feel unhappy, then please write to use at the address provided.

The Insurers are under no obligation to repair your vessel and in certain circumstances, to repair your vessel will not be economically viable and we will then declare your vessel "a constructive total loss". When we do this you will be paid in full the agreed value of the vessel as it appears on your policy schedule and or any subsequent endorsement. No deductible will be applied normally except where the loss and or damage was caused by a named windstorm or theft. You will normally be given the option of retaining title to your vessel. Your Insurers have the option to take title to your vessel but you must appreciate that they are not under any obligation to do so and responsibility for the vessel remains with you unless you are told anything to the contrary. If your vessel is sold to a third party after it has been declared a constructive total loss you may be required to execute a bill of sale.

**Payment of the Claim**
Once you have returned the release document to us, we will usually send you your funds within 30 days of receipt. We can pay you by way of cheque/draft or fund transfer. If you require a fund transfer please provide us with the following;

    a)   Your Full Name
    b)   Your Postal Address
    c)   Bank Full Name
    d)   Bank Address
    e)   ABA/ Routing Number or SWIFT Code
    f)   Name on Account
    g)   Account Number

If your bank is not in the USA, please provide details of your bank's US correspondent bank:

    a)   US Correspondent Bank Name
    b)   US Correspondent Bank Address

A fund transfer usually takes three to four days to effect. We will do our best to pay you before the expiration of 30 days from the day we receive the release, but please be patient.

If you have nominated a loss payee or have more than one assured name listed on your application form we can only process payment by way of cheque. This cheque will be made out in your name and/or the name of the loss payee/additional assured.

At this or any stage, please feel free to telephone, or e-mail our claims department with any query that you might have. Above all we want you to enjoy many hours of safe, trouble free operation of your vessel, but we know that accidents do happen and that's what we are here for. We will assist and advise so far as we are able to.



Concept Special Risks Limited
Unity House, 2 Station Court, Station Road, Guiseley, LS20 9EY United Kingdom
Telephone +44 1943 882719
claim@special-risks.co.uk

CSR/CL/2

## Treating Customers Fairly Statement

We are committed to treating customers fairly as a matter of good business and fair dealing. To achieve this, we give the following undertakings:

- We will take all reasonable steps to only do business with brokers and professional intermediaries who are licensed by their local governmental authority to arrange insurance.
- We will ensure that all intermediaries that we do business with are provided with clear and full descriptions of the coverage we offer.
- Our policy documentation will be in accordance with market & regulatory standards.
- We will ensure that all claims are handled promptly and in accordance with the terms of the policy.
- We will only employ competent staff and will ensure that they are properly trained to carry out their jobs.

If for any reason, you feel that we have failed to meet the high standards that we have set ourselves, we would like to know and would encourage you to follow the complaints procedure set out below.

- Firstly, raise the issue either orally or in writing with the person at your broker's office dealing with your insurance.
- Within 5 business days of receipt by your broker he should have sent you a written acknowledgement advising you of the person who will be dealing with your concerns.
- Within 20 business days we will provide you or your advisers with a written response unless the matter is sufficiently complicated to require further investigation, in which case we will advise you or your advisers of this in writing, with an explanation of why we cannot yet make a determination. We will also advise you of when you may expect our final response.
- None of the above procedure in any way affects your right to legal advice or assistance or to seek assistance from your local insurance regulator.

CSR/TCF/1